(26 App. Div. 470.)

### PEOPLE v. SICKLES.

(Supreme Court, Appellate Division, Second Department.  March 15, 1898.)

1. CRIMINAL LAW—SECOND OFFENSE—EVIDENCE.

If a person indicted for a crime charged as a second offense pleads not guilty, the first conviction must be proved on the trial, although, before the jury is impaneled, he admits his former conviction; for his plea puts in issue every material allegation of act in the indictment, and there is no practice in New York which permits a defendant to admit part of the charges of an indictment, and restrict the trial to the other charges put in issue.

2. SAME.

Although, under such an indictment, it is only the second offense which is punished, yet the first offense is an ingredient of the crime charged, in the sense that the legislature has made certain criminal acts committed by one who has previously been guilty of a crime a greater offense than the same acts when done by a person hitherto innocent.

3. SAME—CONSTITUTIONAL LAW.

A provision of law authorizing the people, upon a plea of not guilty, to prove a former offense charged in the indictment, even though it is admitted by the defendant, is not on that ground unconstitutional.

Goodrich, P. J., and Woodward, J., dissenting.

Appeal from trial term.

Livingston Sickles was convicted of robbery in the first degree, and appeals.  Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Martin W. Littleton, for appellant.

Josiah T. Marean, Dist. Atty., for the People.

CULLEN, J.  The appellant was indicted for the crime of robbery in the first degree, charged as a second offense.  On arraignment, he pleaded not guilty.  When the trial of the indictment was moved, and before the jury was impaneled, the defendant admitted his former conviction, and sought to have evidence of such conviction excluded from the jury.  This application was denied, and on the trial the first conviction was proved, and the defendant convicted as charged in the indictment.  Thereupon he was sentenced to imprisonment for the term of 21 years.  The sole question raised on this appeal is the admissibility of the evidence of the first conviction after the concession or admission made by the defendant before the trial.

That it is necessary that the indictment should charge the first conviction is settled by authority, and the question is not open to debate.  Wood v. People, 53 N. Y. 511; Johnson v. People, 55 N. Y. 512.  The plea of the defendant was not guilty.  This put in issue every material allegation of fact in the indictment.  There is no practice in this state which permits a defendant to admit part of the charges of

an indictment, and restrict the trial to the other charges put in issue. Whatever, therefore, may be the views of Mr. Bishop (Cr. Law, § 961), or of Mr. Wharton (Cr. Law, § 3418), as to the advisability of a procedure which would restrict the jury to passing upon the issue of the defendant's guilt of the particular act charged, and thus relieve him from the prejudice which might be excited by the proof of his prior offense, it is sufficient to say that the law of this state has not provided for any such practice.

The appellant, however, goes further, and claims that any provision of law which authorizes the people to prove a former offense, and to this extent prejudice the presumption of innocence to which he is entitled, is not due process of law, and therefore unconstitutional. On this question, also, we are concluded by authority. In Johnson v. People, supra, it was argued that it was error to receive evidence of the commission of the former offense, and thus show the prisoner's bad character before he had put his character in issue. The objection was held untenable. It was there said by Church, C. J.:

"A more severe penalty is denounced by the statute for a second offense; and all the facts to bring the case within the statute must be established on the trial. The objection that the evidence may affect the prisoner's character has no force when such evidence relates to the issue to be tried. Such evidence may be prejudicial to a prisoner as to the second offense, and a case might occur of a conviction upon too slight evidence, through the influence which a previous conviction of a similar offense might exert upon the minds of the jury; but there is no legal presumption that such a result will ever be produced. An English statute, passed in 1837, requires the principal charge to be first found by the jury, and then authorizes proof of the former conviction to be presented to them; but we have no such statute."

Though the point that the statute was unconstitutional is not directly discussed in the opinion, it is necessarily involved in the decision of the court. As the question is thus settled by authority, we should not deem it wise to enter into its further discussion, were it not for the reliance placed by the appellant on an expression to be found in the opinion in the case of People v. Raymond, 96 N. Y. 38. It was there said by Judge Finch:

"The first offense was not an element of or included in the second, and so subjected to added punishment, but is simply a fact in the past history of the criminal, which the law takes into consideration when prescribing punishment for the second offense. That only is punished."

That it is only the second offense which is punished is unquestionable, because, after the defendant has expiated his first transgression by undergoing punishment therefor, it would be beyond the power of the state to punish him a second time for that offense. But I feel constrained to take issue with the proposition that the first offense was not an element of or included in the second, if that statement is to be construed as broadly as contended for by the appellant's counsel. It is first to be observed that in the Raymond Case the first conviction was charged in the indictment, and proved on the trial. There is nothing which prevents the legislature from making an act committed by one who has previously been guilty of a crime a greater offense than the same act when done by a person hitherto innocent of offense; and I think it is on this principle alone that criminal legislation of the character of that under discussion can be upheld as constitutional.

The statutory provision as to punishing second offenses is not wholly ·exceptional. Section 85 of the Penal Code (which is but a re-enactment of the previous provisions of the Revised Statutes) provides for the punishment of escaping prisoners. A prisoner who, confined in ,prison, or being in lawful custody, by force or fraud escapes therefrom, is guilty of felony, if such custody or confinement is upon a charge, .arrest, commitment, or conviction for a felony, and of a misdemeanor if such custody or confinement is upon a charge, arrest, commitment, or ·conviction for a misdemeanor. Thus, two men breaking the county jail together, one confined for a felony, and the other only for a mis- ·demeanor, while guilty of precisely the same acts, would commit two different crimes,—the one a felony, and the other a misdemeanor. It is apparent that in such a case the state, condition, or what may be termed the "previous history" of the two offenders, is, by the express terms of the statute, an essential element of the crime itself. I con- ·cede that the legislature may direct the places for incarceration of ·criminals of different classes, prescribing that women and children shall be confined only in penitentiaries or reformatory institutions, while men grown shall be punished in the state prisons, and that in such cases it is not necessary that the indictment should charge the ,age or sex of the defendant. It may be true that the legislature may .authorize the judge to mitigate the punishment of women or children; but, under section 688 of the Code, for the second offense the defend- .ant must be sentenced to at least the longest term provided as a punishment for the first offense, and·may be sentenced for twice that time. It seems to me clear that the difference in the punishments necessarily constitutes a difference in the offenses, the distinction between which depends in no wise on nomenclature. It may be, if the ·constitutional provision as to cruel and inhuman punishments does not ,prevent, that we might go back to the old common law, and make every felony punishable by death, in the discretion of the court. In such a case, the discretion being in the court as to all offenders, the fact that it might impose more severe punishment on one than on the ·other would be no violation of individual rights. But if the law provided that, in case of conviction for certain offenses, one class of prisoners could be sentenced to only a year's imprisonment, while another ·class must, without discretion in the court, be put to death, no refinement of reasoning could prevent us from seeing that the facts which ·constitute this classification must be integral parts of the offense itself.

The authorities cited from other states are not in opposition to this view. In State v. Freeman, 27 Vt. 523, defendant was convicted of selling liquor under a statute which provided that the punishment should be increased if the defendant had been convicted of former offenses. Proof of former conviction could, by the statute, be made .at any time before sentence. The validity of this legislation was upheld by the court, on the ground that the offense was not a crime, but a mere violation of police regulation, which the statute could have authorized the justice to determine summarily, without the intervention of a jury at all. The same principle was held in State v. Haynes, .35 Vt. 570. But, in State v. Spalding, 61 Vt. 505, 17 Atl. 844, the

statute having been changed, it was held to be necessary to prove conviction of the former offense before the jury.    In People v. Delany, 49 Cal. 394, it was held that if the defendant pleads guilty to the offense as charged in the indictment, where the indictment charges the offense of petit larceny committed after a previous conviction for the same crime, the plea confesses the offense charged, which includes the previous conviction.    Whatever decisions are to be found in that state apparently in conflict with the one cited arise out of the peculiar practice at one time authorized by the Penal Code of that state.    By section 1025, on an indictment for a second offense, the defendant was allowed to plead separately to the former conviction and to the new offense.    If he pleaded guilty to the former conviction, but not guilty of the recent offense, then only the latter was passed on by the jury. But, if he pleaded not guilty to both charges of the indictment, then both issues were determined by the trial jury.    See Ex parte Young Ah Gow, 73 Cal. 438, 15 Pac. 76.    These cases not only justify proof of the second conviction on the trial, but would indicate that, in a case of serious crimes, the charge of former conviction constitutes an ingredient of the crime, and must, when put in issue, be passed on by the jury.    All that Thomas v. Com., 22 Grat. 912, is authority for, is that the jury, in addition to the verdict of guilty, must specially find that the defendant had been formerly convicted.·

The English practice under the first statute enacted of this character was to charge in the indictment and prove on the trial the prior conviction.    Rex v. Jones, 6 Car. & P. 391.    This practice was altered by statute so that, on a plea of not guilty, the jury first inquires into the subsequent offense, but, if convicted of that offense, then the prior conviction is submitted to and determined by the jury.    The fact that, despite the change in procedure, the prior conviction is still to be found by the jury, would seem strong evidence that the jurists of that country were of opinion that such prior conviction constituted an integral part of the offense.    If the first offense is an ingredient of the crime charged, it must be submitted to the jury when the defendant pleads not guilty.    We think it would be well if our criminal procedure were changed so as to accord with the English practice, and suffer or permit the defendant to sever his plea, allowing him to confess his former conviction while denying the recent offense.    Such change, however, must proceed from the legislature.    As long as the law stands in its present condition, no right of the defendant is violated by proving his prior conviction.    In fact, in the case suggested of escape from prison, if done after sentence, we do not see how it would be possible, by any change in the law, to avoid proving the defendant's conviction of the crime for which he was imprisoned.

The judgment should be affirmed.

HATCH, J., concurs.

WILLARD BARTLETT, J. (concurring).    While I should think it fairer to the accused person not to permit proof of a prior conviction of a prior offense until there had been a determination in respect to the offense presently on trial, I concur with Mr. Justice CULLEN in the·

view that the question involved in the present appeal is practically settled by authority.    I also agree with him that it does not necessarily follow that proof that the defendant has committed a prior offense will bias and prejudice the jury in determining whether he has committed a second.    But the word "necessarily" is of great importance in this proposition.    That such proof has a strong tendency to prevent an impartial determination in respect to the second accusation, I have no doubt.

WOODWARD, J. (dissenting).    The appellant was indicted for the crime of robbery in the first degree, charged as a second offense.    On the arraignment he pleaded not guilty.    When the trial of the indictment was moved, and before the jury was impaneled, the defendant admitted his former conviction, and sought to have evidence of such conviction excluded from the jury.    This application was denied, and on the trial the first conviction was proved, and the defendant convicted as charged in the indictment.    Thereupon he was sentenced to imprisonment for the term of 21 years.    The sole question raised on this appeal is the admissibility of the evidence of the first conviction after the concession or admission made by the defendant before the trial.

It was decided in the case of Wood v. People, 53 N. Y. 511, that it was necessary to charge in the indictment the fact of a previous conviction.    "An essential ingredient of the aggravated offense," say the court, "charged upon the accused, was that the alleged felony was committed after a former conviction of an offense punishable by imprisonment in a state prison, and a discharge 'either upon being pardoned, or upon the expiration of his sentence,' upon such conviction." This case came up under the provisions of the Revised Statutes (2 Rev. St. p. 699, § 8), which differ from the section of the Penal Code now under consideration, in that it was necessary to incur the additional penalty that the prisoner should have been discharged "either upon being pardoned, or upon the expiration of his sentence"; and the court, without going into the constitutional aspects of the case, decided that it was not sufficient that the indictment should charge that the crime was a second offense, but that it should have contained the allegation of his discharge, "either upon being pardoned or upon the expiration of his sentence."    The judgment was reversed in behalf of the prisoner, and it determines only that, in the opinion of the court, it was equally as necessary to set forth the fact of the discharge as it was the fact of a second offense; or, to be more exact, that it was necessary, to bring the defendant fairly within the provisions of the statute, that a discharge as well as the previous conviction should be alleged. This does not, however, meet the question presented in this case, and a careful search of the authorities fails to disclose any adjudication. We are asked to decide, not whether the allegations of an indictment are sufficient, but is the legislature empowered to enact a law which deprives a defendant of the presumption of innocence guarantied to him by section 389 of the Code of Criminal Procedure?    The law under which this question arises is section 688 of the Penal Code, which provides as follows:

"A person, who, after having been convicted within this state, of a felony, or an attempt to commit a felony, or of petty larceny, or, under the laws of any state, government, or country, of a crime which, if committed within this state, would be a felony, commits any crime within this state, is punishable upon conviction of such second offense as follows: If the subsequent crime is such that, upon a first conviction, the offender might be punished, in the discretion of the court, by imprisonment for life, he must be sentenced to imprisonment in a state prison for life; if the subsequent crime is such that, upon a first conviction, the offender would be punishable by imprisonment for a term less than his natural life, then such a person must be sentenced to imprisonment for a term not less than the longest term, nor more than twice the longest term, prescribed on a first conviction."

The essential error, as it seems to me, is in assuming that there is such a crime as robbery as a second offense. The chapter of the Penal Code devoted to robbery makes no mention of such an offense. It describes in detail what constitutes the crime in its various degrees, and names the punishments which shall be inflicted. Section 688 describes no such offense as robbery as a second offense, but it declares that a person who has been convicted of a felony or other crime "is punishable upon conviction" of a second offense by a more severe penalty than would be necessary for a first offense. The language is that:

"A person, who, after having been convicted within this state, of a felony, * * * commits any crime within this state, is punishable upon conviction of such second offense."

He is not to be convicted of the crime of robbery as a second offense; but of "such second offense;" which is the crime for which he is apprehended and tried; that is, once having been convicted of a crime, if a person again "commits any crime within this state," he is, upon conviction of this last offense, to be punished more severely than in the case of a first offense. He is to receive no punishment for the first offense; that would be to place him twice in jeopardy for the same offense; but, it being apparent to the law that his first punishment has failed to work that reformation which it is the policy of the law to promote, the discretionary power of the court is modified by the rule laid down in section 688 of the Penal Code in respect to those who have been convicted of "such second offense." This is the proceeding prescribed by the Code in respect to habitual criminals. Section 690 provides that:

"Where a person is hereafter convicted of a felony, who has been, before that conviction, convicted in this state, of any other crime, or where a person is hereafter convicted of a misdemeanor who has been already five times convicted in this state of a misdemeanor, he may be adjudged by the court, in addition to any other punishment inflicted upon him, to be an habitual criminal." People v. McCarthy, 45 How. Prac. 97.

The duty of determining this question, which is not more serious than that involved in the case of determining the fact of a prior conviction, which involves an increase of penalty, is left to the court by the provisions of section 690 of the Code; and it is difficult to show any good reason why the same method should not be pursued in the matter of a previous conviction, unless the defendant, after "conviction of such second offense," should elect to raise the question of identity or some other material issue.

Assuming, however, that it was the intention of the legislature that there should be a trial of the fact before the jury, have the people in-

trusted it with this power?    Section 389 of the Code of Criminal Procedure provides that:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved; and in the case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal."

This presumption of innocence extends, not alone to the crime with which he is charged, but to all other crimes.    He is presumed to be free from all criminal taint; and, the defendant not raising the issue by the introduction of affirmative evidence in his own behalf, the court has no right to allow any fact to go to the jury which disturbs this presumption, which is not germane to the crime with which he is charged.

The first section of the first article of the constitution of this state provides that:

"No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers."

And it was held in the case of Taylor v. Porter, 4 Hill, 140, that:

"The meaning of the section, then, seems to be, that no member of the state shall be disfranchised, or deprived of any of his rights°or privileges, unless the matter shall be adjudged against him upon trial had according to the course of the common law.    It must be ascertained judicially that he has forfeited his privileges, or that some one else has a superior right to the property he possesses, before either of them can be taken from him.    It cannot be done by mere legislation."

In a like vein is the language of Kent in his Commentaries (2 Kent, Comm. 13), where he says that:

"It may be received as a self-evident proposition, universally understood and acknowledged in this country, that no person can be taken or imprisoned, or disseised of his freehold or liberties or estate, or exiled or condemned, or deprived of life, liberty, or property, unless by the law of the land or the judgment of his peers.    The words, 'by the law of the land,' as used originally in Magna Charta in reference to this subject, are understood to mean due process of law,—that is, by indictment or presentment of good and lawful men; and this, says Lord Coke, is the true sense and exposition of these words."

One of the rights and privileges secured to "any citizen" of this state is that presumption of innocence guarantied by section 389 of the Code of Criminal Procedure, and which goes to the extent of a presumption of innocence of all crime; and this presumption cannot be said to exist, nor can the defendant be assured of a fair and impartial trial, if he is compelled to confront his accusers upon a second charge with the fact of his previous offense in evidence before the jury.    And we are of the opinion that the legislature has no power to pass an act destroying this presumption; that the fact of a previous conviction can have no place in the records or proceedings of the court until after it has been determined that there has in fact been a crime committed by the person charged with such crime.    It then becomes a legitimate inquiry in determining the duty of the court in pronouncing sentence, and, in the absence of a controversy as to the identity of the defendant, there would seem to be no objection to the court taking judicial notice of the records of previous conviction, the same as in the case of an habitual criminal.    However this may be, there can be no reasonable doubt of the fact that the defendant is entitled to all of the presumptions upon a trial for a second offense that belong to any citizen upon trial for a

first offense; and, as the statute provides that section 688 shall become operative only "upon conviction of such second offense," there can be no justification for establishing the fact of a previous conviction before the jury until after it has been determined that the second offense has in fact been committed by the person on trial. The legislature would have no power to pass an act which would be valid which provided for such a proceeding.

This conclusion is not disturbed by the reasoning of the court in the case of Johnson v. People, 55 N. Y. 512, because the constitutional question was not under consideration, and the court distinctly say that "the former conviction and discharge must be alleged in the indictment, and, upon issue joined, must be proved on the trial, and passed upon by the jury." There was no issue joined in the case at bar. The defendant admitted the fact of his previous conviction, and the admission of evidence bringing before the jury the fact of a previous conviction was clearly opposed to the rule which forbids the introduction of evidence as to character except when the way is opened by affirmative testimony in behalf of the defendant. "The objection," continues the court in the same case, "that the evidence may affect the prisoner's character, has no force when such evidence relates to the issue to be tried. Such evidence may be prejudicial to a prisoner as to the second offense; and a case might occur of a conviction upon too slight evidence, through the influence which a previous conviction of a similar offense might exert upon the minds of the jury; but there is no legal presumption that such a result will ever be produced." It is true, as the learned court has aptly said, that "the objection that the evidence may affect the prisoner's character has no force when such evidence relates to the issue to be tried"; but when there is no issue before the jury to be tried, except the question of the subsequent crime, it is manifestly improper to introduce evidence as to a specific fact in the history of the prisoner, which can have no other effect than to destroy the presumption of innocence to which he is entitled, and which establishes a character and a disposition to crime.

While it may be the case that there is no "legal presumption" that the evidence of a previous conviction might result in the conviction of a prisoner on too slight evidence, the courts have repeatedly reversed the trial courts for charges to juries which sought to discredit the evidence of previous good character, the reasoning tending strongly to the assertion of a contrary doctrine. In the case of People v. Lamb, *41 N. Y. 360, the trial court had charged the jury that:

"Good character, as all judges have charged juries, is a shield and protection where it is offered in doubtful cases, because it repels the presumption of guilt; but in a clear case it affords no protection. Yet it is for you to say how far and what degree of weight you will give to that testimony. * * * If you think it entitled to any weight, you can regard it. If you do not, you can reject it."

Judge Smith, delivering the opinion of the court, at page 378, says:

"In so far as the charge left it to the discretion of the jury to utterly disregard the uncontradicted evidence of the defendant's good character (and it seems to have done so unqualifiedly), it was erroneous and prejudicial to the defendant. The true rule is that such evidence must, in any event, be considered by the jury, together with the other facts and circumstances of the

case. It is not merely of value in doubtful cases, but will of itself sometimes create a doubt where none could exist without it; and, if good character be proved to the satisfaction of the jury, it should turn the scale in favor of the defendant, even in cases where without it the whole evidence would slightly preponderate against him. Stephens v. People, 4 Parker, Cr. R. 396; Cancemi v. People, 16 N. Y. 501; 2 Russ. Crimes, 785, 786."

In the case of People v. Clements, 42 Hun, 353, the court say that:

"It was error to charge the jury that in any case evidence of good character would be of no avail. There is no case in which the jury may not, in the exercise of sound judgment, give a prisoner the benefit of a previous good character. No matter how conclusive the other testimony may appear to be, the character of the accused may be such as to create a doubt in the minds of the jury, and lead them to believe, in view of the improbabilities, that a person of such character would be guilty of the offense charged; that the other evidence in the case is false, or the witnesses mistaken."

The language used above is from the opinion of the court in the case of Remsen v. People, 43 N. Y. 6, and is quoted with approval in the case cited.

The same case is again relied upon in support of the conclusion of the court in the case of People v. Wileman, 44 Hun, 187, where the trial court was reversed because of the charge to the jury, which declared that:

"When the evidence in the case satisfies the jury that the crime has been committed, and that the accused has committed the crime, then the evidence of good character is of no avail."

In the case of Stover v. People, 56 N. Y. 315, the case was again cited with approval, the court saying:

"Good character of the accused is to be considered by the jury upon the question of the credibility of direct evidence of his guilt, the same as upon proof of circumstances tending to show it, or the inferences to be drawn from such circumstances."

If good character is so important, if it may raise doubts in the minds of the jury which could not "exist without it," and if "it should turn the scale in favor of the defendant, even in cases where without it the whole evidence would slightly preponderate against him," then the converse must be true,—that evidence of bad character, of the actual commission of a similar offense, would tend to turn the scale against the prisoner when the evidence as a whole would slightly preponderate in his favor. If evidence of good character may serve to create a doubt in the minds of the jury where such doubt would be impossible without it, then it is fair to say that evidence of bad character, and especially in the same line as the case on trial, would be likely to remove the doubt where otherwise it might exist. But this is not a matter of argument. It is a fact within the knowledge of every intelligent man. The presumption of guilt is bound to assert itself in the mind of every man if he knows that the prisoner has been previously convicted of the same or a similar offense. It is the very groundwork of the suspicion, the investigation, arrest, trial, and conviction in a very large percentage of the criminal cases.

In the case of People v. Raymond, 96 N. Y. 38, Judge Finch, in delivering the opinion of the court, says that the "first offense was not an element of or included in the second, and so subjected to added punishment, but is simply a fact in the past history of the criminal, which the

50 N.Y.S.—25

law takes into consideration when prescribing punishment for the second offense. That only is punished." If this is the true construction of the statute (and it is the only one which does not come into conflict with that provision of the constitution which forbids that a person shall be put twice in jeopardy for the same offense), then it can have no proper place in an indictment, nor in the evidence which is to go before the jury, unless the prisoner chooses to open the way to its admission by offering evidence of previous good character. The previous conviction is merely a fact in the history of the prisoner. It is not a crime, nor does it constitute any part of the crime with which he stands charged. It is merely the record of the judgment in a trial, with the merits of which the jury in the case at bar cannot deal; and, as such, it has no more place in the records of the trial of a subsequent crime than any other fact in the history of the prisoner which is not connected with the offense for which he is on trial.

In New Jersey, where the crimes act (1 Gen. St. p. 1100, par. 271) provides that "all murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of wilfull, deliberate and premediated killing, or which shall be committed in perpetrating or attempting to perpetrate any arson, rape, etc., shall be deemed murder in the first degree, and that all other kinds of murder shall be murder in the second degree," it was urged that a special count was indispensable. The court, in the case of Titus v. State, 7 Atl. 621, say:

"The argument urged in support of the position that a special count was indispensable, whenever the state relied on any of the statutory particulars connected with the killing, to intensify such killing into murder, was that as the act created and defined the defense, every constituent of the crime embraced in such definition must be stated in the indictment. But this proposition cannot be sustained, for it has been conclusively settled by the court of errors in this state in the case of Graves v. State, 45 N. J. Law, 204, 358, that the section relied on did not create any new crime, but 'merely made a distinction, with a view to a difference in the punishment, between the most heinous and the less aggravated grades of the crime of murder.'"

This is analogous to our statute in reference to second offenses. It creates no new offense, but merely makes a "distinction, with a view to a difference in punishment," between those who have been convicted a second time, and those who have only been convicted of a first offense; and it is not only unnecessary to make a special count in the indictment, alleging such second offense, but it is entirely out of place in the proceeding.

While dealing with New Jersey, it is proper to note that in the case of Clark v. State, 4 Atl. 327, the court of errors, delivering its opinion through Judge Reed, say:

"The rule of evidence upon which this assignment is founded is entirely settled. As a general rule, the state, for the purpose of showing that the defendant would be likely to commit the crime charged, cannot prove that he committed other crimes, although of a like nature."

This is unquestionably the rule in this state so far as it relates to crimes of which the defendant has not been convicted, and this brings us back to the question: "Has the legislature the power, under the constitution, to enact a statute which denies to one citizen the rights

and privileges secured to another? Has it the power to enact a valid law which shall protect the unconvicted criminal in the presumption of innocence, while denying that protection to the man who, having been convicted, has paid the penalty of his crime?" It is difficult to understand how there can be any two opinions upon this question. Either section 1 of article 1 of the constitution is a barren ideality, or it inhibits just this kind of discrimination in the trials of persons charged with crime; and the mere fact that the contrary practice has prevailed for a long series of years, without the question being raised, cannot in any manner change the constitution. It is not necessary, however, for this court to bring into question the action of the legislature. The law as it stands is capable of a construction entirely consistent with the constitution. The error and the wrong come from a misapplication of the law, and not from the law itself.

Archb. Cr. Pl. *696, after setting forth the statute law of England in reference to subsequent offenses, says:

"Considerable difficulty formerly existed as to the course to be pursued under this statute. A prejudice was created in the minds of the jurors by a knowledge of the previous conviction, and yet in strictness that circumstance could not be withheld from their knowledge. To remedy this, the statute 6 & 7 Wm. IV. c. 111, was passed; and now the prisoner must be arraigned, and the jury must be charged, and the evidence proceed, as if the indictment did not contain the averment of a previous conviction; and this allegation must not be opened to the jury, or their verdict taken upon it, until after they have found the prisoner guilty of the subsequent felony, and then the prosecutor must prove the previous conviction and identity of the prisoner, and upon this, likewise, the jury must deliver their verdict. If, however, the defendant call witnesses to character, or if, by the cross-examination of the witness for the prosecution, evidence of character be elicited (Reg. v. Gadbury, 8 Car. & P. 676), the previous conviction may be proved in reply, and the compound question will in that case be left to the jury in the first instance."

The Penal Code has been adopted in comparatively recent years, and, it may be assumed, with a knowledge of the practice in England; and, if we read section 688 with this practice in view, we shall see that there is nothing in our statute inconsistent with the statute law in England, and that there is no good reason why we should not adopt that practice, and especially as such a rule is necessary in order that the individual may be made secure in his constitutional rights. If we change the word "second" to "subsequent," which is the true meaning of the statute, we will get a clearer idea of the intention of the legislature; and it will be easier to harmonize the law with the requirements of the constitution and the dictates of justice. It will then, in so far as it is necessary to this discussion, read:

"A person who, after having been convicted in this state of a felony, * * * commits any crime, * * * is punishable upon conviction of such subsequent offense, as follows."

He is not to be convicted of a second offense as a distinct crime, but upon a conviction of a subsequent offense he is to be punished with greater severity than for a first offense. There is, in law, no second offense until the prisoner has been convicted. Up to that time he is presumed innocent of the subsequent offense, and it follows, therefore, that there can be no question of a second offense which the jury may pass upon until it appears, as a matter of law, that the offense for

which he is on trial has been committed by the prisoner. Once convicted of the subsequent offense, the question of a previous conviction comes up for consideration; and this may be established by the admission of the prisoner, or by the records, coupled with evidence of the identity of the prisoner. If the court has not the authority to prescribe this rule, then the attention of the legislature should be called to the fact; but there can be no excuse for a construction of a penal statute which deprives the prisoner of his constitutional rights, even though the court should be permitted to use its discretion in administering punishment. It is important to note in this connection that the section of the Penal Code now under consideration does not necessarily extend the term of punishment for the crime. It simply takes it out of the discretion of the court to make it less than the full punishment denounced against the crime, though it allows the court, in its discretion, to make the term twice that which is prescribed for a first offense. If, therefore, this court should decide that it was not proper to allow the evidence of a prior conviction to go to the jury under any circumstances, it would still be in the power of the trial court, in the exercise of a sound discretion, to sentence the prisoner to a maximum term for first offenses, which would, in all probability, meet all the requirements of justice and sound public policy in a majority of cases. In other words, section 688 does not compel the trial court to do more than it may now do in sentencing a prisoner who has been convicted; and no material injury is likely to result to society if the discretion vested in the court to double the terms of those who are convicted of a second offense is made temporarily inoperative by the fact that there is no way provided to establish that the prisoner has been guilty of a previous crime, of which he has been convicted.

But there is a legislative provision which fully meets the requirements of this case. Section 483 of the Code of Criminal Procedure reads as follows:

"After a plea or verdict of guilty, in a case where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the suggestion of either party, that there are circumstances, which may be properly taken into view, either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily at a specified time, and upon such notice to the adverse party as it may direct."

The court has a discretion in naming the punishment for a second offense, the latitude given being between the maximum sentence for the first offense and twice that term for the second, where the punishment is less than for life; and it requires no great stretch of the use of language to say that it has a discretion in all of the matters mentioned in section 688, as that section becomes operative only upon conviction of the second offense; and, if this reasoning is correct, the only way consistent with the constitution which has been provided by the legislature of this state for determining whether it is in fact a second offense is by such a process as is authorized in the section quoted above. "Statutes enlarging or conferring personal rights," says Secretary Fish, in his instructions to Mr. Davis (Whart. Int. Law Dig. § 174), "are to be construed liberally, in contradistinction to those which abridge or take away such rights"; and this rule is none the less applicable to

constitutional provisions intended to preserve those rights. If we apply this rule to section 1 of article 1, as related to this question, there can be no doubt that the trial court was in error in admitting to the jury the evidence of a previous conviction. It destroyed that presumption of innocence to which the defendant was entitled in common with every other person charged with a crime; and it had a tendency to prejudice the jury against him, and to overcome that reasonable doubt which the evidence in the case, upon its merits, may have established. There can be no doubt that it would require less of evidence to destroy a reasonable doubt in the minds of a jury if they knew to a certainty that he had already been convicted of a previous crime than would be the case where the prisoner was allowed the full benefit of the presumption of innocence to which he is entitled.

The judgment of the court below should be reversed, and the defendant should be given a new trial.

GOODRICH, P. J., concurs.