FREDERICK
*vs*
COMMONWEALTH

---

## Frederick *vs* Commonwealth.

ERROR TO THE LOUISVILLE CITY COURT.

*Bawdy houses.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

INDICTMENT.

*Case 5.*

*Sept.* 11.

THIS is an indictment against Frederick, a free man of color, for keeping a disorderly house. The only specifications in the indictment are, that the evil persons invited to and frequenting his house, were there permitted to remain, "*drinking, tippling* and otherwise greatly misbehaving themselves." On the trial, among other acts of disorder proven, it was proven that Emily McCune and other prostitutes, occupied the upper rooms of the defendant's house, as his tenants, to which a flight of stairs ascended on the outside of the house, and the entry to the rooms was not through the lower rooms, which were

The case stated.

FREDERICK
*vs*
COMMONWEALTH

occupied by the defendant. The rooms had been rented to Emily McCune by the agent of the defendant, and the lease had not expired at the time the disorders charged were committed, nor at the time the indictment was found, and the disorders were committed, mainly, by the females in the upper rooms; and among other acts of disorder, evidence was adduced tending to show that they had kept those rooms as a bawdy house. But it does not appear whether the defendant was present, or knew when the lease was made by his agent, or knew that Emily McCune was a common bawd, or that she rented the rooms for the purposes of prostitution. The counsel for the defendant asked the Court to instruct the jury that, "if they believed that the females were tenants of the defendant, that he was not liable for their conduct:" but the Court overruled the instruction and told the jury "that if they believed that the defendant had control over the rooms occupied by the females, that he was responsible for their misbehavior." The defendant's counsel further asked the Court to instruct the jury "to disregard all that portion of evidence which established the practice of prostitution among the females who occupied the rooms aforesaid." But the Court overruled the motion and told the jury "that the habits of prostitution of the females was a matter to increase their finding." The jury found the defendant guilty, and assessed his fine at $150, and from the judgment rendered thereon, he has brought the case to this Court.

One who rents a house which is, during the time of the lease, used as a bawdy house, is not responsible unless it was rented with a knowledge of the purpose for which it was used.

In the absence of proof that the defendant was privy to or authorized the lease to Emily McCune, made by his agent, or that he was aware that she was a common prostitute, or intended to use the rooms as a bawdy house, he cannot be found guilty of aiding and abetting in keeping a bawdy house, nor in leasing to that end, within the principles settled by this Court in the case of *Ross* vs *The Commonwealth*, (2 *B. Monroe*, 417;) and during the continuance of the lease he cannot be said to have had *control* over the rooms leased. The first instruction given was, therefore, misleading and ought not to have been given.

The second instruction is also erroneous. The facts of prostitution proven, tend to show that the upper rooms were rented, used and kept by Emily McCune as a bawdy house. This is a distinct offence for which she might be indicted for keeping, and he in aiding and abetting in keeping. There is no specification of this offence in the indictment, nor of any acts of prostitution. Such offence or acts cannot therefore be proven in aggravation of damages or otherwise. If they could, he might be twice punished for the same offence: first, under an indictment charging him with permitting *drinking* and *tippling* in his house, and secondly, under an indictment charging him with aiding and abetting in keeping a bawdy house. The allegation *"otherwise greatly misbehaving"* after the proof of the acts of misbehaviour specifically charged, as "drinking and tippling," will authorize the proof of other acts of misbehaviour in aggravation of the damages, which do not in themselves amount to a distinct indictable offence, but will not authorize the proof of a distinct offence not charged, and of which the defendant is not notified by the indictment, and against which he may not be prepared to defend himself.

An indictment charging generally the keeping of a *disorderly house*, without specification as to the *acts* of disorder, would not be good. So if the acts specified are not proven, the indictment cannot be sustained upon the proof of other *acts* not *specified*. But if the acts specified or such of them as constitute the house a disorderly one be proven, then other acts, which do not amount to a distinct offence, and for which a distinct prosecution will not lie, may be proven under the general charge to increase the fine.

Judgment reversed and cause remanded that a new trial may be granted.

*Ballard* for plaintiff: *Cates, Attorney General*, for Commonwealth.

**FREDERICK**
*vs*
**COMMONWEALTH**

Under an indictment for keeping a disorderly house, the particular acts should be specified, and none other which in themselves constitute indictable offences can be proved, but such only as aggravate those specified.

An indictment for keeping a disorderly house generally, without specifying particular acts, is not good.